```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

| | |
|---|---|
| Dualite Sales & Service, Inc., | ) ) ) |
| Plaintiff, | ) Case No. 1:04-CV-13 ) |
| vs. | ) ) |
| Moran Foods, Inc., d/b/a Save-a-Lot, Ltd., | ) ) ) |
| Defendant. | ) |

O R D E R

This matter is before the Court on Defendant Moran Foods, Inc.'s motion for summary judgment (Doc. No. 20). For the reasons that follow, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

I. Background

This case presents issues of contract interpretation based on a set of largely undisputed material facts.

The Plaintiff in this case Dualite Sales & Service, Inc. ("Dualite"). Dualite is an Ohio corporation with its principal place of business located in Clermont County, Ohio. Complaint ¶ 1. Dualite designs, sells, and services indoor and outdoor signs for advertisers. Id.

The Defendant in this case is Moran Foods, Inc. Moran Foods does business as Save-a-Lot, Ltd. For ease of reference, the Court shall refer to the Defendant as "Save-a-Lot." Save-a-

1

Lot is a Missouri corporation with its principal place of business located in Earth City, Missouri. <u>Id.</u> ¶ 2. Save-a-Lot owns and operates a national chain of retail grocery stores. <u>Id.</u>

The dispute between the parties arises out of series of purchase agreements which required Dualite to manufacture and Save-a-Lot to buy custom-made signs for Save-a-Lot stores. The question presented is whether Save-a-Lot is obligated to buy only completed signs or whether, under the circumstances of this case, Save-a-Lot is also obligated to buy the individual component parts that make up the signs. Although there were a number of individual agreements, the parties agree on the representative controlling language. <u>See</u> Doc. No. 20, at 4; Doc. No. 22, at 2. The Court reproduces here an exemplar of a complete agreement with the pertinent section outlined:

 **Dualite** Dualite Sales & Service, Inc.

SAVE-A-LOT, LTD.
MINIMUM/MAXIMUM PROGRAM
EFFECTIVE 3-01-00 THRU 12-31-00
ON EXISTING ORDERS IN HOUSE AND SUBSEQUENT REORDERS
FEBRUARY 10, 2000
QUOTATION Q00-02-10SAVE01/MGCB-1 - SAVE-00.

| ind Type: | Minimum/Maximum: | Pricing: |
|---|---|---|
| 2'0-½" Single Face Wall Mount Sign | 5/10 | $1370.00 each. |
| 2' Replacement Logo face - Unpacked | As Required | $ 374.00 each. |
| for Shipping (1 or 2 per) for Replacement Logo Face | As Required | 103.00 |
| 2'0-½" Double Face Center Pole Mount Sign | 5/10 | $1887.00 each. |
| 2'0-½" Double Face Between Pole Mount Sign | As Required | $1797.00 each. |
| 2'0-½" Double Face Twin Pole Mount Sign | As Required | $1887.00 each. |
| 16'0-½" Single Face Wall Mount Sign | 5/25 | $1485.00 each. |
| 16'0-½" Replacement Logo Face - Unpacked | As Required | $ 440.00 each. |
| for Shipping (1 or 2 per) for Replacement Logo Face | As Required | 126.00 |
| 16'0-½" Double Face Center Pole Mount Sign | As Required | $2432.00 each. |
| 16'0-½" Double Face Between Pole Mount Sign | As Required | $2314.00 each. |
| 16'0-½" Double Face Twin Pole Mount Sign | As Required | $2432.00 each. |
| 24'0-½" Single Face Wall Mount Sign - White Background | 5/25 | $3011.00 each. |
| 24'0-½" Replacement Logo Face (White Background) - Unpacked | As Required | $1014.00 each. |
| for Shipping (1 or 2 per) for Replacement Logo Face | As Required | 284.00 |
| 24'0-½" Double Face Twin Pole Mount Sign – White Background | As Required | $5223.00 each. |
| 24'0-½" Single Face Wall Mount Sign - Black Background | 5/25 | $3011.00 each. |
| 24'0-½" Replacement Logo Face (Black Background) - Unpacked | As Required | $1014.00 each. |
| te for Shipping (1 or 2 per) for Replacement Logo Face | As Required | 284.00 |
| 24'0-½" Double Face Twin Pole Mount Sign – Black Background | As Required | $5223.00 each. |

prices subject to sales tax, special code charges, CSA charges, and freight. All freight is f.o.b. Williamsburg or Owensville, Ohio and discounted 43% for either collect or prepaid and billed, as long as Dualite continues to receive a discount from our freight carriers. bject to acceptance within 30 days. Note: Buyer assumes liability for copyright infringement when graphics are made to Buyer's cifications.

One Dualite Lane • Williamsburg, OH 45176
(513) 724-7100 • FAX (513) 724-9029

DUA 019



Quotation Q00-02-10SAVE01MGCB-1 cont'd.
Page 2

All prices are based on a minimum/maximum program, whereby Dualite will automatically increase the inventory levels when the minimum inventory is reached. "All orders subject to an overrun or underrun of 10% on the maximum commitment. All prices will be reviewed and adjusted annually, as well as quantities designated under the minimum and maximum categories. In the event of a logo change or if the program is discontinued, Save-A-Lot Ltd. will only be obligated for any inventories remaining up to maximum" on designated items.

Take out period is twenty four months from date of order is entered for signs (not contract date). Any signs remaining in our inventory at end of take-out period are subject to immediate lot billing. In the event of a logo change; size change; discontinuation of the program; or expiration of the take-out time, Save-A-Lot, Ltd. agrees to pay for any signs remaining in stock (up to maximum") immediately. At this time an invoice would be rendered with terms net 30 days. Any signs remaining in our inventory after two years will be subject to storage and insurance charge of two per cent (2%) per month on unshipped balance.

Dualite agrees that Save-A-Lot, Ltd. name, trademark and logo are the exclusive property of Save-A-Lot, Ltd. and Dualite has no right, title or interest in them whatsoever, and no trademark rights shall insure to Dualite through Dualite's authorized use of the Save-A-Lot, Ltd. trademark. Inventory reports will be furnished on monthly basis, showing the inventory remaining on committed items.

The Minimum/Maximum Program will be continued upon return of this document signed by an authorized representative of Save-A-Lot, Ltd. It will be countersigned by an authorized representative of Dualite Sales and Service, Inc. with a copy returned to Save-A-Lot, Ltd.

Note: This contract is only valid as long as Dualite Sales and Service, Inc. remains an exclusive supplier of the items covered by this agreement.

DUALITE SALES & SERVICE, INC.

*Mike Gill*

Mike Gill
Area Sales Manager

MG/mfd

cc: Cecelia Bolender/Dennis Emery

For: Save-A-Lot, Ltd.                    For: Dualite Sales & Service, Inc.

_____ 4/13/00              *Cecelia Bolender*
Authorized Signature                    Authorized Signature

** TOTAL PAGE.002 **

One Dualite Lane • Williamsburg, OH 45176
(513) 724-7100 • FAX (513) 724-9029

DUA 020

As can be seen, in the event of a logo change, the purchase agreement states that Save-a-Lot "will only be obligated for any inventories remaining up to maximum* on designated items" and that Save-a-Lot "agrees to pay for any signs remaining in stock (up to maximum*) immediately."

In August 2000, Save-a-Lot did in fact redesign its logo, developing a "second generation" sign.  At the time, Dualite had in stock two completed "first generation" signs and 110 various component parts needed to construct first generation signs.  Dualite then began manufacturing seventeen of the second generation signs for Save-a-Lot.  Dualite billed Save-a-Lot $166,421.00 for the component parts it had on hand for the first generation signs but Save-a-Lot refused to pay the invoice on the grounds that the purchase agreement only required it to purchase completed signs.  When Save-a-Lot refused to pay, Dualite placed its account on hold and refused to deliver to Save-a-lot the seventeen second generation signs.  Dualite rejected an offer from Save-a-Lot to purchase the components at Dualite's cost.  Dualite offered to settle the invoice at a 50% "scrap out" price.  This price, however, did not include delivering the components to Save-a-Lot so Save-a-Lot rejected the proposed compromise.

On December 19, 2003, Dualite filed a complaint against Save-a-Lot for breach of contract, action on account, and promissory estoppel in the Clermont County, Ohio Court of Common

5

Case: 1:04-cv-00013-SSB-TSB Doc #: 25 Filed: 08/23/05 Page: 6 of 17 PAGEID #: 507

Pleas. The complaint sought damages of $179,804.00 and an award of pre- and post-judgment interest. Save-a-Lot removed the case from state court to this Court on January 12, 2004 pursuant to 28 U.S.C. § 1441. The basis for the Court's subject matter jurisdiction is diversity of citizenship in that the parties are domiciled in different states and the amount in controversy is in excess of $75,000. On April 8, 2004, Dualite filed an amended complaint (Doc. No. 11) for the sole purpose of naming Moran Foods, Inc. as the proper party. The Court does have subject matter jurisdiction over the case because the requisites for diversity jurisdiction have been satisfied.

Following discovery, Save-a-Lot moved for summary judgment on each of Dualite's claims. The motion is fully briefed and ready for disposition.

## II. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. United States v. Diebold, Inc., 369 U.S. 654

(1962). "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original). The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.;

8

Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. Analysis

The Court notes at the outset that the parties agree that Ohio law applies to this case. The Court takes up the issues presented seriatim.

### A. Breach of Contract

Save-a-Lot argues that it is entitled to summary judgment because the purchase agreements required it to purchase completed signs, but not the raw materials used to make the signs, when it changed its logo. Dualite argues that, read as whole, the purchase agreements state that Save-a-Lot was obligated to purchase both "inventories" and completed signs when it changed its logo and that "inventories" includes the component

parts used to make the signs.  Thus, the issue presented is one of contract interpretation.  The Court agrees with Dualite's reading of the purchase agreements.

In interpreting a contract, the trial court must give common words their plain and ordinary meaning unless manifest absurdity would result or some other meaning is clearly intended from the face of the writing or overall contents of the instrument.  Alexander v. Buckeye Pipe Line Co., 374 N.E.2d 146, 150 (Ohio 1978).  Moreover, the court must give meaning to every paragraph, clause, phrase, and word so that nothing is rendered meaningless or surplusage.  Affiliated FM Ins. Co. v. Owens-Corning Fiberglas Corp., 16 F.3d 684, 686 (6th Cir. 1994).  An ambiguity exists only where a term cannot be determined from the four corners of the contract or where the contract language is susceptible to two or more reasonable interpretations.  Id. Finally, in arriving at its interpretation of the agreement, the court must consider its subject matter, nature, and purpose.  Id.

The purchase agreement clearly calls for Save-a-Lot to purchase completed signs upon instituting a logo change and there seems to be no dispute about that point.  The agreements, however, also require Save-a-Lot to purchase "any inventories remaining up to the maximum" upon instituting a logo change.  The dispositive question is the meaning of the term "inventories," and specifically whether "inventories" means just completed signs

10

or whether it encompasses the component parts on hand. It seems fairly clear to the Court that "signs" and "inventories" have different meanings otherwise there would be no reason to include clauses which state that Save-a-Lot is obligated to buy both signs and inventories if it changes its logo. A contrary conclusion would render the term requiring Save-a-Lot to buy inventories surplusage.

It then becomes further evident that "inventories" means the component parts used to assemble the signs. The first page of the purchase agreement, <u>infra</u> at 3, itemizes the component parts, the minimum and maximum number of the parts, and the price of each part. Ordinarily, when a purchaser buys something, the seller charges one price for the assembled product and the purchaser neither knows nor cares what the cost of components used to make the product was. An exception might be where the seller is giving an estimate, but the agreements here are framed in terms of "quotation" and "pricing" and thus are more definitive than estimates. <u>Id.</u> Consequently, there would be no reason to itemize the prices and the minimum and maximum quantities of the components unless that information was of some significance in the agreement.

The Court further observes that this section of the agreement uses "prices" - plural - instead of "price" - singular - in stating that "[a]ll prices will be reviewed and adjusted

11

annually, as well as quantities designated under the minimum and maximum categories."  This section also indicates that "inventories" refers to the component parts.  If "inventories" meant completely assembled signs, the sentence would state "The price will be reviewed and adjusted annually, as well as the quantity under the minimum and maximum category" because, although Save-a-Lot would be purchasing more than one sign, there presumably would be only a single price per sign.  Furthermore, the Court notes that while there are several different "categories" of components listed there are not different categories of signs listed.  Additionally, this section states that in the event of a logo change Save-a-Lot would be obligated for inventories "up to the maximum* on designated items."  Again the use of the plural "items" indicates that inventories means the component parts both because there are multiple component parts listed in the agreement and because it makes little sense to refer generically to a completed sign as an "item."

   Last but not least, as the Court instructed in Affiliated FM Ins., this interpretation is consistent with the subject matter, purpose and nature of the agreement.  The subject matter of the agreement was for Dualite to manufacture and Save-a-Lot to purchase signs which were custom-made to its specifications.  Except for wire and bulbs, Dualite cannot use the components it used to manufacture Save-a-Lot signs to

12

manufacture the signs of other customers. F. Schube Aff. ¶ 30. It makes little sense that Dualite would obligate itself to keep on hand a minimum supply of speciality parts needed to manufacture signs to Save-a-Lot's specifications, but then be stuck with a supply of parts in cannot use if Save-a-Lot would decide to make a unilateral decision to change its logo. Thus, it is logical that the purchase agreement was written, and should be interpreted, to place the risk and the cost associated with a logo change on the purchaser and not on the seller.

Accordingly, for the reasons stated, the Court finds that the purchase agreements at issue obligate Save-a-Lot to purchase the component parts Dualite had in store when Save-a-Lot changed its Logo. Therefore, Save-a-Lot's motion for summary judgment on Dualite's breach of contract claim is not well-taken and is **DENIED**.[1]

### B. Action on Account

An action on account is appropriate where the parties have conducted a series of transactions for which a balance remains to be paid. Blanchester Lumber & Supply Co. v. Coleman, 590 N.E.2d 770, 771 (Ohio Ct. App. 1990). An action on account

---

[1] Save-a-Lot also argues that summary judgment on the breach of contract claim is appropriate because Dualite failed to mitigate its damages. This argument is not well-taken. Failure to mitigate is an affirmative defense which limits the amount of damages the plaintiff can recover, but it is not a defense to liability. AB & B, Inc. v. Banfi Products, Inc., 594 N.E.2d 1151, 1151 (Ohio Ct. App. 1991).

is essentially a breach of contract claim.  Id. ("Where the defendant enters a general denial to the allegations of the complaint, the plaintiff must prove all of the elements for a cause of action for breach of contract.").  Save-a-Lot argues that summary judgment on this claim is appropriate because an essential element of an action on account is that the plaintiff delivered the goods to the defendant and, in this case, Dualite did not deliver to it the sign components that are the subject of the complaint.

The Court acknowledges that in AMF, Inc. v. Mravec, Inc., 440 N.E.2d 600 (Ohio Ct. App. 1981), the appellate court entered a directed verdict for the defendant where the plaintiff failed to prove that it had delivered the goods to the defendant. Id. at 605-06.  In reviewing this decision, however, we believe that in actuality the AMF court was stating only that the plaintiff had failed to prove that it had performed its part of the bargain.  As the court noted earlier in its opinion, "the 'account' is pertinent only for purposes of pleading; at trial, the plaintiff may choose to prove its claim of breach of contract through oral testimony."  Id. at 605.  Thus, the AMF court apparently recognized, as does this Court, that an action on account is just a variation on a claim for breach of contract.

One of the essential elements that the plaintiff is required to prove on a breach of contract claim is that it

14

performed or was excused from performing its contractual obligations.  W & W Dev. Co. v. Hedrick, No. 73965, 1999 WL 219896, at *7 (Ohio Ct. App. Apr. 15, 1999).  The plaintiff is excused from performance if the defendant commits a material breach of the contract.  Nious v. Griffin Constr., Inc., No. 03AP-980, 2004 WL 1752872, at *3 (Ohio Ct. App. Aug. 5, 2004). As the Court has just held, the purchase agreement required Save-a-Lot to purchase the sign components when its changed its logo. Save-a-Lot, however, refused to pay Dualite the full contractual price for the components and thus breached its obligations under the agreements.  As a consequence, Dualite was excused from delivering the components to Save-a-Lot.  Therefore, Dualite's failure or refusal to deliver the components to Save-a-Lot does not bar its action on account claim.

Accordingly, Save-a-Lot's motion for summary judgment on this claim is not well-taken and is **DENIED.**

### C. Promissory Estoppel

The Court agrees, however, that Save-a-Lot's motion for summary judgment is well-taken on Dualite's promissory estoppel claim.  A plaintiff cannot prevail on a promissory estoppel claim where a written agreement covers the same subject matter as the alleged promise.  Doe v. Flair Corp., 719 N.E.2d 34, 40 (Ohio Ct. App. 1998).  In this case, it is clear that Dualite's promissory estoppel claim is based on Save-a-Lot's breach of the written

15

purchase agreements.  See Doc. No. 22, at 20 ("In the present case, Save-a-Lot's written promise is contained in the Contracts, as Save-a-Lot promised that, if it changed its logo or discontinued the minimum/maximum program, it would purchase 'any inventories' remaining in Dualite's stock.  Dualite reasonably relied upon Save-a-Lot's promise to Dualite's detriment, and has consequently sustained damages.").  Therefore, Dualite cannot assert a claim for promissory estoppel.

Dualite's reliance on Schleicher v. Alliance Corp. Res., Inc., Nos. 95APE03-311, 312, 1995 WL 723555 (Ohio Ct. App. Dec. 7, 1995), for the proposition that promissory estoppel is applicable to written agreements is misplaced because it is contrary to the vast weight of authority in Ohio, including at least one opinion by the Supreme Court of Ohio.  See Ed Schory & Sons, Inc. v. Soc. Nat'l. Bank, 662 N.E.2d 1074, 1080 (Ohio 1996); see also Worthington v. Speedway SuperAmerica, L.L.C., No. 04CA2938, 2004 WL 2260501, at *4 n.3 (Ohio Ct. App. Sept. 20, 2004)(collecting cases).

Accordingly, Save-a-Lot's motion for summary judgment on Dualite's promissory estoppel claim is well-taken and is **GRANTED**.  This claim is **DISMISSED WITH PREJUDICE**.

## Conclusion

In conclusion, Save-a-Lot's motion for summary judgment is **GRANTED IN PART** and is **DENIED IN PART**.  Save-a-Lot's motion is

well-taken and is **GRANTED** on Dualite's promissory estoppel claim. That claim is **DISMISSED WITH PREJUDICE**. Save-a-Lot's motion is not well-taken and is **DENIED** with respect to Dualite's breach of contract and action on account claims.

**IT IS SO ORDERED**

Date  August 23, 2005                s/Sandra S. Beckwith
                                Sandra S. Beckwith, Chief Judge
                                  United States District Court