```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION


Dualite Sales &              )
Service, Inc.,               )
                             )
          Plaintiff,         ) Case No. 1:04-CV-13
                             )
     vs.                     )
                             )
Moran Foods, Inc., d/b/a     )
Save-a-Lot, Ltd.,            )
                             )
          Defendant.         )
```

O R D E R

This matter is before the Court on Defendant Moran Foods, Inc.'s motion for reconsideration (Doc. No. 26). For the reasons set forth below, Defendant's motion is well-taken and is **GRANTED**.

Plaintiff Dualite Sales & Service, Inc. ("Dualite") filed a complaint against Defendant Moran Foods, Inc., d/b/a Save-a-Lot, Ltd. ("Save-a-Lot"), for breach of contract, action on account, and promissory estoppel. The parties' dispute arose out of series of purchase agreements in which Dualite agreed to manufacture and Save-a-Lot agreed to purchase custom made signs for Save-a-Lot stores. In particular, the parties contested

1

whether the purchase agreements required Save-a-Lot to purchase the component parts used to make the signs when Save-a-Lot decided to change its logo.  The issue devolved to whether the term "inventories" in the purchase agreement meant completed signs or whether "inventories" meant the component parts used to manufacture the signs.  In ruling on Save-a-Lot's motion for summary judgment, the Court held that "inventories," as that term is used in the purchase agreements, means the component parts used to make the signs.  The Court, therefore, denied Save-a-Lot's motion on Dualite's breach of contract and action on account claims.  The Court, however, did grant Save-a-Lot's motion for summary judgment on Dualite's promissory estoppel claim on the grounds that Dualite was precluded from asserting such a claim where the subject matter of the alleged promise was covered by a written agreement.

      Save-a-Lot moves the Court to reconsider that part of its order which held that the purchase agreements require Save-a-Lot to buy the component parts of the signs upon implementing a logo change.  In support of its motion, Save-a-Lot argues in part that in holding as it did, the Court confused the itemization of the various types of completed signs with the component parts that Dualite claims that Save-a-Lot is obligated to buy.

      A motion for reconsideration is not specifically provided by the Federal Rules of Civil Procedure, but it is often

2

treated as a motion to alter or amend under Rule 59(e). See McDowell v. Dynamics Corp. of America, 931 F.2d 380, 382 (6th Cir. 1991); Shivers v. Grubbs, 747 F. Supp. 434, 436 (S.D.Ohio 1990). Generally, there are three situations which justify reconsideration under Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." In re Continental Holdings, Inc., 170 B.R. 144, 146 (Bankr.N.D.Ohio 1992), aff'd, 152 B.R. 466 (N.D. Ohio 1993). When the motion is served after the ten-day requirement of Rule 59(e), however, some courts treat the motion as a Rule 60(b) motion for relief from judgment. See Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 268 (6th Cir. 1998). The standard for granting a Rule 60(b) motion is more stringent than the standard for granting a Rule 59(e) motion: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective

3

application; or (6) any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b). In this case, Save-a-Lot filed its motion for reconsideration within ten days of the Court's ruling on the motion for summary judgment. Accordingly, the Court treats Save-a-Lot's motion as arising under Rule 59(e).

Upon reviewing the purchase agreements a second time, the Court agrees with Save-a-Lot that its earlier judgment was based on a fundamental misapprehension of the identity of the pieces which were itemized on the first page of the agreements. Therefore, because of that misapprehension, it would be manifestly unjust to allow the judgment to stand.

The controversy surrounds the following language in the purchase agreements:

> All prices are based on a minimum/maximum program, whereby Dualite will automatically increase the inventory levels when the minimum inventory is reached. *All orders subject to an overrun or underrun of 10% on the maximum commitment. All prices will be reviewed and adjusted annually, as well as quantities designated under the minimum and maximum categories. In the event of a logo change or if the program is discontinued, Save-a-Lot, Ltd. will only be obligated for any inventories remaining up to the maximum* on designated items.[1]
>
> Take out period is twenty-four months from date of order is entered for signs (not contract date). Any signs remaining in inventory at end of take out period are subject to immediate lot billing. In the event of

---

[1] Hereinafter, the Court will refer to this section as "the first paragraph."

>       a logo change, size change, discontinuation of the
>       program, or expiration of the take out time, Save-a-Lot
>       agrees to pay for any signs remaining in stock (up to
>       maximum*) immediately.  At this time an invoice would
>       be rendered with terms net 30 days.  Any signs
>       remaining in our inventory after two years will be
>       subject to storage and insurance charge of two per cent
>       (2%) per month on unshipped balance.[2]

In the earlier order, the Court framed the dispositive issue as whether "inventories" means just completed signs or whether it means the component parts needed to assemble the signs.  Because the agreements clearly call for Save-a-Lot to purchase completed signs upon instituting a logo change, the Court reasoned that "inventories" had a meaning different from "signs" because it would be redundant to state that Save-a-Lot was required to purchase both "inventories" and "signs" if those terms had the same meaning.  Reinforcing this conclusion, the Court observed, was the fact that the first paragraph at issue referred to the first page of the agreement which itemized various parts.  This was because the only items on which designations of minimum and maximum quantities could be found was on the first page of the agreement.  Therefore, the Court reasoned that in order to give effect to each part of the agreement, Save-a-Lot was required to buy the inventories referred to in the first paragraph.

All of this reasoning was correct as far as it goes. The fundamental misunderstanding of the Court, however, was that

---

[2] Hereinafter, the Court will refer to this section as "the second paragraph."

5

the pieces itemized on the first page of the agreement are not component parts of the signs, but rather a list of the different types of completed signs that Dualite agreed to manufacture for Save-a-Lot. In other words, the Court correctly interpreted the first paragraph to require Save-a-Lot to purchase up to the maximum number of designated items on the first page of the agreement, but mistakenly believed that those items were component parts instead of completed signs. Therefore, the Court is compelled to agree that when the first paragraph refers to "inventories" it means the inventory of completed signs on which a minimum and maximum quantity has been designated.

As counsel for Save-a-Lot argued at the hearing on the motion for reconsideration, this interpretation does not read out or render surplusage any part of the agreement. Understanding that "inventories" and "signs" have the same meaning, it becomes clear that the first paragraph identifies when Save-a-Lot would become obligated to purchase the items listed on the first page of the agreement - if it changed its logo or Dualite discontinued the minimum/maximum program. Conversely, the second paragraph identifies when Save-a-Lot is obligated to render payment for the signs. In reading the second paragraph, it is easy to focus narrowly on the sentence which refers to the obligation to pay upon implementing a logo change and believe that the agreement contains two different sections establishing obligations to

purchase. Read as a whole, however, it becomes evident that the second paragraph delineates two different times when payment must be made, as opposed to setting forth any separate purchase obligation. The second paragraph initially provides that if any signs remained in inventory at the end of the twenty-four month "take out period," Save-a-Lot was required to pay for them immediately on a lot billing basis. On the other hand, if Save-a-Lot changed its logo or Dualite discontinued its minimum/maximum program, Save-a-Lot was required to pay immediately for any signs in inventory, up to the maximum amount, on terms net 30 days, which the Court understands to mean within 30 days of the invoice date. Thus, as defense counsel aptly argued, the first and second paragraphs are consistent with each other.

In the first order, the Court commented that its interpretation was correct because it made sense that the agreement placed the risk of a logo change on the buyer. Again, however, that analysis was based on the Court's misapprehension regarding the items listed on the first page of the agreement. The purchase agreement is unambiguous in that it nowhere does it obligate Save-a-Lot to purchase any components or sub-components used to manufacture the finished signs under any circumstances. Thus, while the Court understands that the purpose of the agreement was for Dualite to manufacture custom-made signs for Save-a-Lot, we are compelled to agree with Save-a-Lot that an

interpretation requiring Save-a-Lot to purchase components, subcomponents, parts, subparts, raw materials, or the "bits and pieces" which comprise completed signs would improperly import terms into the agreement.

The Court agrees with Save-a-Lot that the earlier order denying Save-a-Lot's motion for summary judgment was clearly erroneous and manifestly unjust because it was based on a fundamental misunderstanding regarding the first page of the agreement. On reconsideration, the Court concludes that the purchase agreements do not require Save-a-Lot to purchase the component parts Dualite used to manufacture the signs when Save-a-Lot changed its logo. Accordingly, the Court **VACATES** that part of its earlier order denying Save-a-Lot's motion for summary judgment on Dualite's claim for breach of contract. Save-a-Lot's motion for summary judgment on Dualite's claim for breach of contract is well-taken and is **GRANTED**. Because Dualite's action on account claim is predicated on establishing a breach of contract, the Court **VACATES** that part of its earlier order denying Save-a-Lot's motion for summary judgment on Dualite's action on account claim. Save-a-Lot's motion for summary judgment on Dualite's action on account claim is well-taken and is **GRANTED**. The remainder of the Court's order, which granted Save-a-Lot's motion for summary judgment on Dualite's promissory estoppel claim, remains in full force and effect. In toto, the


Court grants Save-a-Lot's motion for summary judgment on each of Dualite's claims. The complaint is **DISMISSED WITH PREJUDICE. THIS CASE IS CLOSED.**

       **IT IS SO ORDERED**

Date   September 26, 2005           s/Sandra S. Beckwith
                                            Sandra S. Beckwith, Chief Judge
                                            United States District Court